Don Guidotti v. Legal Helpers Debt Resolution Good morning, may it please the Court. My name is John Pelzer, here today representing the Appellant's Global Client Solutions and Rocky Mountain Bank and Trust. I'd like to reserve four minutes for rebuttal. The fundamental question before the Court today is whether an arbitration clause in an agreement that is acknowledged as having been received by the plaintiff, and to which the plaintiff specifically agreed to be bound, should be enforced. Is there an issue of fact as to whether or not she received the second agreement? I would say no, Your Honor, because there has been no evidence whatsoever to suggest that she did not receive the, we call it the Account Agreement and Disclosure Statement. This is the document that's incorporated in. How about her own representation through counsel that she didn't receive it, and the distinction in the documents that the District Court found persuasive? That is, that every other document that you say you sent has a facts header, and the AADS does not. That isn't evidence? First of all, there has been no statement whatsoever by the plaintiff, Ms. Godati, by affidavit or declaration or otherwise denying receipt of the Account Agreement and Disclosure Statement. We do have counsel who has said that, but of course, that's not evidence. We do have the documents that have the DocuSign header on the top, but we don't have any testimony, other than, again, argument of counsel. No testimony that these are... But it's evidence, isn't it? Isn't it the fact that some documents have the header, and this one conspicuously does not constitute evidence from which an inference can be drawn that the documents that have the header were sent, and the one that doesn't, wasn't? Any number... I understand you might not like that inference, you might disagree with it, but it is evidence, isn't it? Well, there's any number of inferences that can be drawn from that. For example, perhaps because this one didn't have a signature line on it, Ms. Godati simply didn't hit the print button. That's one possibility. Or perhaps in the year and a half, she lost it. You might well draw other inferences. The question, though, I mean, I'm trying to pull you out a little bit on your assertion that there's no evidence whatsoever, because that is evidence, and the court did draw an inference from it, so I guess it's not really accurate to say there's no evidence, right? If there was some testimony from Ms. Godati or someone to the effect that this stack of documents is exhaustive, these are all the documents I got, then that would be some evidence. If simply the fact that counsel puts into an appendix some documents but doesn't put in something else, if that gives rise to an inference, then I would... If that's the court's ruling, then certainly I'll accept it, but that is an extraordinarily weak straw upon which to base that kind of a conclusion. But if that's the case, then what we have is an issue of fact. We have her specific acknowledgment on a document that she admits signing that says, I received this document, and I agree to be bound by it. She signed that, and she admits she signed it, and she admits she got it. Now she says, no, I didn't. That's an issue of fact that, if anything, should have been decided on a Section 4 hearing, evidentiary hearing, under this court's decision imparting it. Was there a problem, or was it appropriate for the district court to look at other cases and indicate there's a pattern here of Rocky Mountain Bank and Global doing this, of saying, I sent you something, and not having sent it, and then trying to assert arbitration rights? I would say, no, Your Honor, for two reasons. One, in each of those five unreported decisions that the court looked at, the plaintiff in that case, in fact, made the effort of submitting an affidavit or a declaration to the effect that I didn't get the Account Agreement and Disclosure Statement, the AADS. That wasn't done in this case. So that distinguishes all those cases from this one, plus the fact... If the plaintiff had signed an affidavit, then we'd be in a different situation. If the plaintiff had signed an affidavit, then I suppose that the district court would have had the Section 4 hearing and would have made findings of fact based on disputed evidence. And of course, we'd be hearing an entirely different standard of review than on the summary judgment standard that we hear on under Parnett. That's interesting, because what you're saying is, if the evidence had been even stronger for the plaintiff, the district court would have had a hearing. But with weaker evidence, the district court found it sufficient to have no hearing and to find against you. Well, again, I was just trying to... I wouldn't concede there was any evidence, but if the court felt that this absence of a document in the plaintiff's appendix was sufficient to create an issue of fact, then the court should have gone forward and had the hearing, if that was the case. Now, on the issue of the other five unreported cases, the other thing I would point out is that five cases is a minuscule percentage of the global customers and the people who receive these documents. If anything, if five glitches occurred out of all those, the inference you would draw is that in any given case it was done correctly. So to draw the inference from the five exceptional cases that it happens in every case is an unreasonable inference to draw. You've taken the position that even if one assumes that the AADS was not delivered contemporaneously and came later, that you should still win, and you've given three reasons, the first of which is an incorporation by reference argument, if I've understood you correctly. The district court cited the Alpert case from New Jersey, and I'm interested to have you explain why Alpert doesn't act as a stopper to the incorporation argument you made. Let me have it here, Your Honor. In the Alpert case, what the law firm in that instance was doing was, in their retainer agreement, told the client, you'll be bound by, trying to get the correct language here, all of our standard policies and procedures. It doesn't even reference a written document at all, never mind a specific written document. And that is what the district court in the Dazen v. Cruden case pointed out, is that the clause that was quoted at page 609 of the Alpert opinion was to no specific document at all. It was extremely nonspecific. And the court in Dazen said, here we have an incorporation of a very specific document, this license agreement in the Dazen case. Right, but the fact that, I mean, the district court looks at the evidence and says, I don't believe that you sent her the document. So the mere fact that you named the document doesn't mean, under Alpert, that you get to claim that the content of the document, no matter how specifically named it might be, is somehow incorporated into the document she did get. What's wrong with that reason? The underlying premise is, she didn't get the document. So you've got to start with that. Right. And if we assume she did not get the document, again, we dispute that, but assume she did not get the document, it still can be incorporated by reference, even though it is absent. That's what happened in the Dazen case. The license agreement was not present. The man said, I never saw it. And the court accepted that testimony, but said, nevertheless, it is incorporated by reference. And in fact, in this court's decision, in the Curleys case, there is an extensive discussion on page 163 about cases where people sign agreements, where they agree to be bound by the bylaws of, in one case, it was a private school, another case, they were talking about the bylaws of a housing association. No suggestion that those bylaws were present at the time the document was signed, and in fact, they were subject to being changed in the future. And the court found, this court found, that kind of an incorporation by reference, where there is a signed written document, they were distinguishing those cases from Curleys, obviously, but where there was a signed written document, that it was entirely possible to incorporate those documents by reference, outside documents by reference. How can you have the benefit of the specifics of a document like an arbitration clause if there's no, if the person literally doesn't have notice of it? It seems that the whole country doesn't get to do that. You can't hold people, particularly consumers, to something they've never seen before. Well, in this case, as I said, the account agreement, excuse me, the special purpose account application, the document that Ms. Guidotti did sign, acknowledged receipt. And if she looked at the document, she got and said, where is this? It's missing. I want to read it before I sign this SPAA. All she had to do was get back to the JG, the company that sent it to her, and say, where is the AADS, this disclosure statement that I'm agreeing to and I'm incorporating by reference. She certainly could have done that. And obviously, then she would have had that benefit. That's unlike the Alpert case, where for all this client knew from this retainer agreement is there was a document. It's just standard practice and procedures. Later on, the law firm came up with a document they called a master retainer agreement and said, that's what we meant when we said standard policies and procedures. But that's not what the retainer agreement said. The retainer agreement just referred generically to policies and procedures that might not even be written. In addition to that point, and I have a little bit remaining before I get my rebuttal time, is the fact that the plaintiff in this case, Ms. Guidotti, does admit receiving the AADS with the arbitration clause in October of 09, and yet allowed performance to continue for 15 months thereafter without objecting. Keep in mind that throughout this time, she had the absolute unilateral right to terminate this agreement at any time. Did she also have the absolute right to rely on the contract which existed at the time she made it, not on anything you might unilaterally change later? I mean, if we accept the premise that you didn't send her the AADS and that you entered into a contract with her, any change that would be made to that contract would have to have been supported independently by new consideration, right? That's assuming, Your Honor, that the application constituted an offer and that her sending it back constituted an acceptance. And we believe that's an incorrect application of basic contract law here. And this gets back to the usual rule that a company that sends an application to a potential customer is not making an offer. That is a solicitation of an offer. The application is exactly that. It's an application. She was told that she was accepted. She was told you've been vetted and you're accepted. So at that point, it was signing papers, right? She was told she was accepted into the JG and LHGR debt reduction program. That is not the same agreement that she had with Global and with Rocky Mountain. In fact, the agreement with Global and Rocky Mountain was specifically contingent on future events. It spoke of the account in the future. It says the account that will be created for you, not the one that's created by your signing this agreement and sending it back, but the one that we'll create for you later is governed by the agreement. And also it was specifically contingent upon verifying her identity for Patriot Act purposes if nothing else, but also the existence of the primary account that she was allowing us to deduct from and her ownership of that account, her right to direct those deductions to be made. So it was subject to those future conditions on the face of the account application itself that she admits signing. And so to define that as an offer and her signature as an acceptance is just misapplication of basic contract principles. For those reasons, we ask that you reverse your demand either to refer to arbitration or for an evidentiary hearing under Section 4. Thank you. Any other questions? Thank you, Mr. Peltzer. Mr. Pinto? Good morning, if it's still morning. May it please the Court, Joseph Pinto on behalf of Don Guadagni. Let me ask you, we've been talking about it, why shouldn't the District Court have held an evidentiary hearing to resolve this issue of receipt? The issue of receipt was created by a misreading of the pleadings by Global and Rocky Mountain. Specifically, the paragraph in the complaint which said that she received the application in agreement was referring to the application because the application language is the agreement. Okay, so the agreement referred to the application. Application, and if you read the application. And that's one reasonable interpretation. Right. But she filed no affidavit, is that correct? Well, no, because the District Court, number one, said that since I've given you the circumstances are, if we take your pleadings as true for purposes of this motion, you received that particular document and the others that she referred to, which was the LHDR attorney retainer agreement and the power of attorney that she signed. Nowhere does she mention the AADS at all as being receipt. She mentions it, doesn't she, Mr. Pinto, in the SPAA itself when she says, I acknowledge big, bold print. I acknowledge receiving the AADS and reading it. Sign my name. That's in the record. Why isn't that all by itself enough to create a material issue of fact that required some kind of a hearing to resolve? I would have thought that both Global and Rocky Mountain would have submitted something that said, we sent it to her. They chose not to do that. All they chose to do was rely on what they thought was an ambiguity in the pleading. I thought they were not just relying on an ambiguity in the pleading. I thought they were relying on your client's signed statement acknowledging receipt and having received and read the AADS at the time she made the application that's contained in the SPAA. It's like alphabet soup here, but I think we all know which documents to talk about. If that's the case, if they've got a signed statement from your client and they present it to the district court and say, she said here, she got it and she read it, what's odd about them relying on that and thinking it's good enough at least to be a material issue of fact starter? All I can say, Judge, is that if I was the attorney and the state of the law regarding this issue, especially since there were prior cases in which this very issue was discussed. I'm trying to decide in this case if there's a material issue of fact. If that's the best argument you can give, I am frankly not persuaded. What I'm saying is if that alone is going to be enough to create an issue of fact, I they would have presented some kind of an affidavit that says we sent it. Well, didn't they present enough? You've got her signed signature, her signature acknowledging that she got it and she read it. Now, at a hearing, you're going to come in with other evidence that she did not get it and that she never got it until October and she didn't sign it. That part, the arbitration clause, was not in what she originally signed and therefore there was no additional consideration. She should not be bound by it. But we're talking about whether there is a material issue of fact that she was signed and she agreed to arbitrate or not. Frankly, I think her signature on a paper acknowledging that she got the agreement and that she is signing and agreeing to it is sufficient to create an issue of material fact. Well, that's not the position that the defendants took at Beloved. They said there was no issue of material fact and they never asked for a hearing to have the judge make any determinations. They filed a motion and said there are no issues here of material fact. She received it. We don't need a hearing below. And they never asked for one, which they could have because the statute says they can have one. The judge has one side saying she got it and one side saying she didn't get it. In order to make a decision in that case, at this point, and I presume that in determining a matter of arbitration, it's the standard of care, is it sufficient on its face that that standard is what we apply? And applying that standard isn't there looking at what both sides say there is a material issue of fact. Do we have to have one side or the other say there's a material issue of fact? If both sides say there is not and they are on different positions as a judge, don't we  Well, the district court judge looked at this and used the 12B6 standard in determining this. Therefore, he was taking as true what the plaintiff said and he was giving her all favorable inferences. Based on that standard, one would say, yes, you have stated and supported your cause of Now, whether or not then in discovery that this issue was going to come up, that there would have been an issue of fact about that particular issue, that may have arisen except for the fact that the defendant said that the summary judgment standard applied in this particular case, not the 12B6 standard. In fact, doesn't the summary judgment standard apply when the question is whether or not there's been a meeting of the minds with respect to arbitration? You've got competing positions being put to the court. It's not as if one side or the other gets the benefit of all inferences in their favor. There's a dispute about whether or not there's a meeting of the minds. That's classically the circumstance where you have to address issues of fact via a hearing. I mean, that's what the statute says. The statute, Section 4, Title 9 says if the court's satisfied that there's an agreement to arbitrate, it'll be submitted to arbitration. How do you get around the statute, Mr. Pinto? Really, Judge, I'm not trying to get around the statute. What I think happened here was instead of the judge believing that there was an issue of fact, he took all of this, including the documents themselves, and found as fact that it was not received even though there was this statement. But could he find his fact without a hearing? Yeah, you just put your finger on it. He found. One finds facts. If you've got competing... Well, all right, if I can't get you to talk about something else here. We heard your opponent say that these things were all incorporated by reference,  and that showed her acceptance of the arbitration agreement. And when I asked specifically about the SPAA, he said, well, it's upside-down view of contract. A lot of you, that is offer acceptance, et cetera. I'd like you to respond to that. Why is he in error in suggesting that no new consideration was needed? Because if you look at that as a modification of the existing agreement, there has to be consideration. And the mere fact that she was performing under the original agreement isn't consideration for this unilateral modification. Right. His response, if I've understood it, is the original agreement was such that they didn't make an offer to her which she accepted. On the contrary, this was initiated by her in some fashion, if I've understood him right. And therefore, they're free to have added that without new consideration. Now, I'm not sure I fully understand the argument, but try to work from their premise if you could. If you look at the original SPAA, nowhere can you interpret that as being an offer because it refers to itself as an application in agreement. And it says you sign this and send it in. In fact, we already have an account number set up for you so that when we start withdrawing the money from your account it's going to go into that account. There's nothing left to do. It's not an offer. I don't think that you can construe that in any way as an offer. It's not like an insurance. They cite to the insurance cases. It's not like an insurance application. It's a totally different purpose. The application there is to assess a risk. That's not what you have here. She's accepted into the program. She signed the retainer agreement. All that they're doing is being a funnel for the money and setting up an account. It doesn't say that the account isn't effective until it's actually money is taken out of your account and put in it because that's the way they set this up. If you go to a bank and you open an account, they won't let you open an account without any money. But this is the way this program was set up. Therefore, the account existed. That's all she had to do. It was just a matter of signing documents. That's all. Okay. The district court cited other cases in which it was pretty clear it thought Rocky Mountain Bank and Trust had been playing fast and loose, wasn't happy with its behavior. Was it appropriate in this context for the district court to look at other factual determination in this case? Well, on the issue of receipt, and of course we get back to the issue, they say she said I got it and she said I didn't get it. But on the issue of receipt, this is the exact same document, the exact same scenario. There's actually no difference in the facts of these other cases. This is a nationwide operation. Therefore, I think it's perfectly permissible for him to look at it, especially since the testimony that the judge cited, the deposition testimony that was taken in the other cases, and in particular in the Ninth Circuit case from the Eastern District of Washington where there was testimony that, in fact, Rocky Mountain Bank and Global were marketing LHDR's particular program nationwide. So it's not like this was an isolated incident. And to say that, okay, there's only five incidences and cases, that's assuming that there's only five people that this happened to. These were class action cases that were all filed, and, in fact, the class certification was granted in the case in Washington. So to say that, oh, it was only five errors that were made, is not really stating correctly what the basis the district court judge was looking at here. Is there a reason, Mr. Pinto, that your client didn't file an affidavit? Here the assertion is made she's come forward with no evidence, and we've had a little conversation about that. But in these other cases, like you said, there's been testimony, there's been assertions by the plaintiff representative. Here we've got nothing from Ms. Guadagni. Why is that? Well, first of all, we never got to discovery. No answer had even been filed. This was just a motion to dismiss, which I assume, under the law, you accept her statement as true. And in the complaint, she said she didn't get it. But attached to the complaint was the SPAA, right? The SPAA was what was referred to in the complaint. That's true. And in the SPAA, she said she did get it. That's true. But in the complaint itself, we claim that she didn't get it, and that was just something that was thrown in, but the document was never produced. So I didn't feel I needed an affidavit. The inference that you – the reasonable inference, then, that she has to be given is that she didn't get it. That's why there was no affidavit, because it was a motion to dismiss. You're not supposed to submit affidavits on a motion to dismiss on 12b-6. If this was a summary judgment motion, and the trial judge said, okay, I'm going to convert this to a motion under Rule 56 because we're considering stuff outside of the pleadings, then we could have submitted affidavits. But it wasn't outside the pleadings. As you've just acknowledged, the SPAA, which is referred to specifically in the pleading, is a document which is signed by your client and acknowledges receipt. Right? Well, then, if you're saying that the statement in the complaint, that she didn't get it, is offset by the statement in the document that she did get it, then I should have been permitted to amend the complaint at that point. Well, we should maybe have had a hearing. Well, Judge, I don't disagree, necessarily, that maybe there should have been a hearing, but the district court judge didn't think he needed it. He's the one that decided that he had enough in front of him to make that decision. And we're the ones who decided if he was right in that or not. Well, if this court believes there should have been a hearing, then I'm prepared to have a hearing and set forth the information to prove what I have to prove. I'm here because I have to be here based on what happened below. Because we asked you to be here. I wasn't going to tell the district court judge that. I think you're making a mistake. We understand. Thank you very much, Mr. Pinto. Thank you, Your Honor. Good. Mr. Pelcer, let me ask you this. Let's assume for the purpose of argument that we think there should be an evidentiary hearing on this. You, in your brief and argument, you've argued that there are alternative ways to deal with this, and that's incorporation and coercive dealing. Am I correct to say that if we thought that this should go back for an evidentiary hearing, then we simply shouldn't address those other two issues? I think, Your Honor, if you choose to resolve this case in that way, it would be unnecessary to reach those other issues. That's correct. We do, obviously, think that this court should reverse and remain with directions to send the case to arbitration. That's, of course, what our primary is. Getting to the question of the standard that should have been applied by the district court here, it was appropriate to address or should have been addressed under a Rule 56 standard and not a 12v6 standard because this was not simply a case of interpreting an arbitration clause against a complaint and saying, this complaint falls within that arbitration clause or not, and therefore I'm going to decide, based on these documents, on a 12v6 standard whether or not to send this case to arbitration. Instead, what we have are divergent statements of what the facts are. We have argument of counsel that says this document wasn't there. We have the statement of his client that says it was there. We have to resolve, frankly, the issue of fact on their side more so than anything else as to whether or not this document was there that had the arbitration clause in it. What is the standard that should apply? 12v6 or summary judgment? Summary judgment, Your Honor. Judge Stolzell in Somerset Consulting says it should be 12v6. Well, depending upon where the issue is. If this was simply a question, as I say, of reading an arbitration clause against an agreement to see whether or not this complaint tracks within the agreement, and therefore should be arbitrated, then that's an appropriate 12v6 approach. But when there's a fundamental difference in fact about whether or not the arbitration agreement was ever even reached, say, for example, someone claims that their signature is a forgery, that can't be decided on a 12v6 standard. It has to be decided on a Rule 56 standard. And if it can't be, if you can't resolve it by affidavits and evidence, then you have a Section 4 evidentiary hearing. You think Judge Stolzell figured it out, stated a good way to approach these matters? I'm sorry? You endorse Judge Stolzell's analysis? In the Somerset case, yes, Your Honor. That's entirely appropriate. For example, if they had attached the AADS to this case, it has the arbitration clause in it, and it was part of their complaint, then it simply would have been a matter of reading their complaint against the arbitration clause to see whether or not it fell within. That's appropriate to do on 12v6. Any other questions? Good. The case was very well argued. Thank you, Your Honor. We thank counsel. We'll take the matter under review.